[Civ. No. 2736.   Third Appellate District.—June 20, 1924.]

# A. S. COATS, Appellant, v. J. H. STEPHENS, Respondent.

[1] LEASES—INABILITY TO IRRIGATE LAND—MUTUAL MISTAKE OF FACT —NEGLIGENCE—DAMAGES.—Where both parties to a lease of land to be cultivated on shares believe that water can be carried through ditches to all of the land, and the lessee, acting in good faith, prepares all of the land for rice, and he does not discover that part of the land is too high to be irrigated from the canal from which the land receives water for irrigation until it is too late to plant some other crop, he cannot be held in damages for the result of the mistake which was common to both him and the lessor, unless he was negligent in ascertaining the true fact.

[2] ID.—ACTION FOR DAMAGES—ABSENCE OF BREACH—EVIDENCE—FINDINGS.—In this action for damages for alleged breach of a lease of farm land to be cultivated on shares, the evidence was sufficient to justify the findings of the trial court to the effect that defendant had cultivated the premises in question in a farmerlike manner and according to the usual course of farming practiced in the neighborhood, and the failure of defendant to raise a crop of rice on the land during the year in question was due to his inability to secure sufficient water for growing such crop that year, that such water shortage did not develop until it was too late to plant any other crop in the spring of that year, and that defendant did not plant an inferior quality of rice in the preceding year.

[3] ID.—WATER SHORTAGE — DUTY OF LESSEE TO DIG WELLS — CONSTRUCTION OF LEASE. — Where the circumstances surrounding the parties at the time of the execution of the lease, as well as the very terms of the lease itself, showed that it was not contemplated that the lessee should go to the unusual expense of procuring water from wells for the irrigation of rice on the leased premises, the lessee was not obligated to go to that expense in order to procure water for the irrigation of a rice crop when a shortage of water prevented the procuring of water from the canal from which the land usually received water for irrigation purposes.

[4] ID.—RULINGS ON EVIDENCE—HARMLESS ERROR.—In this action for damages for the alleged breach of a lease of farm land to be cultivated on shares, the error, if any, of the trial court in overruling plaintiff's objection to questions asked by defendant's counsel

---

1.  See 6 Cal. Jur. 86; 6 R. C. L. 621.

3.  See 15 Cal. Jur. 625; 6 Cal. Jur. 252, 294; 16 R. C. L. 698; 6 R. C. L. 835, 849.

4.  See 3 Cal. Jur. 1004; 2 R. C. L. 247.

as to whether, in the opinion of the witness, defendant handled the land in a farmerlike manner, according to the usual practice, and as to whether defendant made more money the way he handled the land than by putting in a different crop, did not result in a miscarriage of justice, but was harmless, where the other facts found by the court, on sufficient evidence, required a judgment in favor of defendant.

(1) 36 **C. J.**, p. 691, sec. 1928 (Anno.). (2) 36 **C. J.**, p. 697, sec. 1936. (3) 36 **C. J.**, p. 696, sec. 1928 (Anno.). (4) 4 **C. J.**, p. 987, sec. 2969.

APPEAL from a judgment of the Superior Court of Sacramento County. Charles O. Busick, Judge. Affirmed.

The facts are stated in the opinion of the court.

C. E. McLaughlin and C. P. McLaughlin for Appellant.

Downey, Downey & Seymour for Respondent.

FINCH, P. J.—The defendant was given judgment for costs and the plaintiff appeals.

The plaintiff leased 150 acres of land to defendant for a term of three years, commencing on the first day of December, 1918. The lease provided: "The party of the second part shall dig and construct such irrigating ditches on said premises as may be necessary properly to irrigate the crops to be grown by him on said premises. The party of the second part hereby covenants and agrees to and with the party of the first part that he will occupy, till and in all respects cultivate the premises above mentioned during the term aforesaid in a farmerlike manner and according to the usual course of farming practiced in the neighborhood, and that he will plant and devote to the raising of rice or other suitable crops all of said leased premises. It is understood and agreed in this connection that if at any time during the term of this lease there shall be a shortage of water so that said party of the second part shall be unable to secure water sufficient for the growing of rice, he shall have the right to plant and grow such other crops as he may deem best." The lease further provided that the defendant would deliver to plaintiff as rent "one-fifth of the entire crops of rice or the

usual proportion of such other crops as may be raised on said premises.''

The complaint alleges that during the year 1919 the defendant failed to cultivate or plant ''any crops of any kind or nature'' upon about ten acres of the land and planted an inferior quality of rice upon a portion thereof, and that during the year 1920 he failed to cultivate or plant any part of the land.

The answer alleges that ''during the first part of 1920 and the spring of said year defendant made arrangements and planned to and intended to plant said leased property to rice. That he was unable to secure, and it was impossible to secure, water sufficient for the growing of rice during 1920, but that said shortage of water did not develop until it was too late to plant any other crop in the spring of said year. That during the preceding season said leased premises had been entirely planted to rice except about ten acres thereof which had been planted to barley. That after said property had been planted to rice for a season and rice had been harvested thereon it was impossible to plant other crops successfully on said property until after said property had lain fallow for at least one season after the harvesting of said rice and that the usual course of farming practiced in the neighborhood was, and is, to let land lie fallow after the harvesting of rice thereon for at least one season before planting any other crop thereon. That because it was too late to plant other crops until the fall of 1920 after the shortage of water for rice became apparent and developed, and because of the additional fact that said property would not have been suitable prior to that time for the growing of other crops, no additional crop was planted in the spring of 1920. . . . That said shortage of water was not the fault of defendant and was due to shortage of water in California, arising from an excessively dry year in 1919 and the spring of 1920. That the method of farming employed by defendant was followed in the neighborhood, was for the best benefit of said property and the parties to said lease and was believed by defendant in good faith to be the best plan of farming to be followed and was the best method of farming said property.''

The court found that in the year 1919 no crop was raised on about six acres of the land; that both parties ''contem-

plated the planting and threshing of rice on said six acres and that said six acres were plowed, cultivated and prepared for the planting of rice thereon during 1919, but that it was impossible to raise a crop of rice on said six acres, because the topography of said six acres made impossible the conduct of water thereto; that water is essential to the production of rice; that the unfavorable topography of said six acres was discovered too late to plant or mature any other crop thereon during the year 1919; that said six acres were tilled, cultivated, and planted to crops in the year 1920''; and that the defendant did not plant an inferior quality of rice in the year 1919. The other facts were found in accordance with the averments of the answer.

The leased land lies under and receives water for irrigation from the canal of the Yolo Water and Power Company. [1] The defendant testified that the six-acre tract not planted in 1919 is too high to be irrigated from the canal but that he did not discover that fact until it was too late to plant to barley. From the terms of the lease it may be inferred that, at the time of the execution thereof, both parties believed that water could be carried through ditches to all of the land. If the defendant acted upon such belief and, as he testified, proceeded in good faith to prepare all of the land for rice, he cannot be held in damages for the result of a mistake which was common to both parties, unless he was negligent in ascertaining the true fact and the evidence does not warrant the inference that he was so negligent.

[2] The defendant testified that no land under the company ditch system was planted to rice in the year 1920, by reason of a shortage of water, that he first learned definitely that no water would be available about the middle of March; that it was then too late to plant to other crops; that the soil is adobe and that barley is planted in that section in the fall of the year; that the land will not produce a crop of barley in the year following a rice crop thereon, but that it is necessary to summer-fallow it first; that that is the ''customary practice that prevails with other rice farmers in Yolo County''; that the defendant could not have produced a crop of barley on the land in the year 1920; that in that year he did plant six acres heretofore mentioned to barley but that it did not mature because of the dry year.

In the years 1919 and 1921 valuable crops of rice were grown on the land, the plaintiff receiving therefrom the sum of $2,154.05 in 1919 and more than $1,900 in 1921. The foregoing evidence is sufficient to sustain the findings of the court.

[3] Appellant contends that it was not impossible for respondent to procure water for the irrigation of a rice crop in 1920, because the evidence shows that he could have put down wells and installed pumping plants to provide such water. The matter of obtaining water from wells was given consideration by the parties. February 24, 1920, defendant. wrote plaintiff as follows: "I am just in receipt of your letter of February 21st, and note what you have to say with reference to the wells, but personally, I cannot see my way clear to spend so much money installing these wells, unless I am to be reimbursed. . . . Investigation shows that I will have trouble in securing the engine and pump and I understand that the expenses would run about five or six thousand dollars. . . . Would you be willing to reimburse me out of your share of the crops if I should see my way clear to install the wells?" The plaintiff testified as follows: "Q. Do you believe Mr. Stephens ought to go to the expense of putting wells there on your property? A. That was not in the proposition. Q. . . . You are not contending now, are you? A. No, sir." Not only the foregoing testimony of plaintiff, but the circumstances surrounding the parties at the time of the execution of the lease and the very terms of the lease itself show that it was not contemplated that the lessee should go to the unusual expense of procuring water from wells for the irrigation of rice. If the defendant had agreed so to procure water, he would have been bound to do so, as contended by appellant, however great the expense, but it is clear that neither party understood that he was so bound.

[4] The court overruled plaintiff's objections to the following questions: "'State whether or not in your opinion, he (defendant) handled it in a farmerlike manner, according to the usual practice? . . . In your judgment did Mr. Stephens make more money the way he handled the land than by putting in a grain crop in 1920?" The objection to each question was as follows: "Objected to as irrelevant, immaterial and incompetent." It may be doubted whether

the first question was subject to the objection made. The objection to the second question should have been sustained. It would have been material to show, by competent evidence, that plaintiff received more from the land as actually farmed than he would have received if grain had been planted in 1920, but whether defendant received more from one crop, above the expense of production, than he would have received from two over the expense of production thereof, was wholly immaterial. But independent of the answers to these questions, the other facts found by the court, on sufficient evidence, required a judgment in favor of defendant. Any error, therefore, in overruling the objections did not result in a miscarriage of justice but was harmless.

The judgment is affirmed.

Plummer, J., and Burroughs, J., *pro tem.*, concurred.